WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Parker,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-14-2135-TUC-DTF<br><br>**ORDER** |

  Plaintiff Elizabeth Parker filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Parker's Opening Brief and Defendant's Responsive Brief. (Docs. 31, 32.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record submitted to the Court, the Commissioner's decision is affirmed.

## PROCEDURAL HISTORY

  Parker filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 9, 2011. (Administrative Record (AR) 203, 210.) She alleged disability from August 12, 2011. (AR 203, 210.) Parker's application was denied upon initial review (AR 93-94) and on reconsideration (AR 121-22). A hearing was held on January 25, 2013 (AR 28-58), after which ALJ Laura Speck Havens found, at Step Five, that Parker was not disabled (AR 13-23). The Appeals Council denied Parker's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Parker was born on December 11, 1960, making her 50 years of age at the onset date of her alleged disability. (AR 203.) Parker last worked in 2008. She had been employed as a respiratory therapist for approximately twenty years, as a CPS case aide and at call centers. (AR 235, 246.) On August 12, 2011, Parker intentionally overdosed on medication and was admitted to the hospital. (AR 298.)

The ALJ found Parker had severe impairments, depression, bipolar disorder, and schizophrenia. (AR 16.) She found that Parker did not meet a listed impairment. (AR 17.) The ALJ concluded that Parker had the Residual Functional Capacity (RFC) to do work at all exertional levels, but limited her to simple job instructions and occasional interaction with co-workers, the public, and supervisors. (AR 19.) Parker could not perform her past relevant work. (AR 21.) However, the ALJ determined (based on testimony from a vocational expert) that Parker could perform other work available in the national economy. (AR 22-23.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Parker argues the ALJ committed five errors: (1) the ALJ erred at Step Three in finding that Parker did not meet a listed impairment; (2) the ALJ rejected Parker's credibility without substantial supporting evidence; (3) the ALJ improperly rejected the opinion of Parker's physician's assistant; (4) the ALJ did not consider all of the medical evidence and Parker's symptoms in making her RFC determination; and (5) the ALJ erred at Step Five by not considering the transferability of job skills and not asking the vocational expert a comprehensive hypothetical.

**Step Three**

Parker argues the ALJ erred in finding that she did not meet listing 12.03, paragraph C(3). "Conditions contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citing 20 C.F.R. § 404.1520(d)).

The claimant bears the burden to establish that she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). At Step Three, the ALJ is required to evaluate the relevant evidence and make sufficient findings for review. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

The impairment listed at 12.03 is captioned as "Schizophrenic, Paranoid and Other Psychotic Disorders" and provides:

> Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> . . . .
>
> C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following
>
> . . . .
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

As to paragraph C(3), the ALJ found "there is no evidence to suggest that the claimant needs to live in a highly structured living arrangement. The claimant has demonstrated the ability to care for personal needs, interact socially and obtain and sustain employment." (AR 18-19.)

1    First, Parker argues the ALJ failed to cite any record evidence to support her
2    evaluation of Parker's functional abilities. Although the ALJ did not cite record evidence
3    in her discussion of paragraph C, immediately preceding that analysis she cited to the
4    record in evaluating the paragraph B criteria. (AR 18-19.) Specifically, the ALJ discussed
5    Parker's limitations in activities of daily living and social functioning with citations to the
6    record. (AR 18.) Thus, there was no error in the ALJ's citations. Parker also argues that
7    the level of functioning found by the ALJ is counter to the testimony from her sister and
8    her medical records that establish her schizophrenia and her need for social and
9    therapeutic support. Parker provided no record citations for this argument and failed to
10   establish that the ALJ's finding was not supported by substantial evidence.

11   Second, Parker argues that her father's home qualifies as a "highly supportive
12   living environment," and that the ALJ erred by not considering that. To qualify, the
13   environment must be "highly structured and supportive." 20 C.F.R. pt. 404, subpt. P, app.
14   1, § 12.00F. Examples of such a placement are a "hospital, halfway house, [or] board and
15   care facility." *Id.* The substance of Parker's argument is that her stability depended upon
16   her family support. Although a home may qualify, Parker provided no record citations to
17   support her assertion that her father's home was equivalent to the regulatory examples
18   described above. She has not presented substantive evidence of structure and support tied
19   to her living environment. Accordingly, Parker failed to establish an error at Step Three.

**Credibility**

Parker challenges the ALJ's finding on her credibility. The ALJ discounted the following testimony that Parker gave at the hearing:

> On a good night, I'll sleep eight hours. . . . [On a bad night,] None.
>
> . . . .
>
> I had this thought that someone told me that I was dead and not to talk to anybody. So I didn't talk to my daughter – . . . And, every time she called, I didn't answer the phone. . . . I mean, I don't know how you can work like that if that's happening. Plus, my sleep issues – . . . I mean, if I don't get a good night's sleep, I can't function during the day.
>
> . . . .

> I thought that my brain was being used by the – by the government satellites for some – something going on in Syria. . . . My biggest delusion was that the government had a weapon made out of the – like, a sun weapon. . . . And it was going to kill me.
>
> [In telling reality from non-reality,] [s]ome days are better than others, you know.

(AR 38, 40-41, 42-43, 44.)

The ALJ found that Parker's testimony was not fully credible. Specifically, she found that Parker experienced improvement with medication management and compliance; she was bored from not working and believed she was capable of working, but chose to discontinue employment services; her delusional thinking does not significantly affect her ability to perform activities of daily living or interact socially; and her limitations were not fully consistent with the objective medical evidence. (AR 20.)

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). When an ALJ finds that a claimant's subjective symptom testimony is not credible, she must set forth specific, clear and convincing reasons for discounting it to ensure a reviewing court that the determination is not arbitrary. *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); SSR 96-7p. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

First, the ALJ found Parker not credible because she experienced improvement with medication management and compliance. There is substantial evidence in the record to support this finding. In August 2011 (the alleged onset date), Parker intentionally overdosed on medication and was admitted to the hospital. (AR 298.) She reported paranoia and delusions, and was rated with a GAF of 30.[1] (*Id.*) She was given a GAF of

---

[1] The GAF is a 100-point scale that provides a "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n.2 (9th Cir.1998); s*ee* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 32, 34 (4th ed. 2000). According to the DSM–IV, a GAF score

- 6 -

50 at the time of her release. (AR 299.) Soon thereafter she began treatment at COPE. Parker's treating nurse practitioner, NP Danker rated her GAF at 55 initially, then at 60 until January 2012. (AR 325, 349, 351, 352.) In February, NP Danker recorded that Parker continued to hear a slight static sound but reported no other hallucinations or delusions, and her GAF was a 65. (AR 347.) Examining psychologist Glenn Marks rated Parker's GAF at 55-60 in March 2012, and concluded she could do work that was not complex or interactive. (AR 392-96.) In April 2012, COPE completed an assessment finding that Parker had made significant improvement, and Parker stated that she was doing much better than at the time of her last assessment and was serious about returning to work. (AR 383.) NP Danker continued to rate Parker's GAF at 65 until September 2012, and Parker did not report any psychotic symptoms during this period. (AR 534, 536, 538, 541, 542, 544, 580, 582.) In October and November, NP Danker recorded a GAF of 60 and, in November 2012, Parker began to report psychotic symptoms. (AR 584, 586.) In 2013, Parker switched from COPE to CODAC. She was still experiencing delusions and treating physician's assistant rated her GAF at a 51. (AR 647.) As noted by the ALJ, Parker continued during this time to attend Camp Wellness and Art Awakenings. (AR 649.)

Parker relies upon the *Garrison* case, in which the court concluded the ALJ "improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit Garrison." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Parker fails to provide any record citations to support this contention (Doc. 31 at 11-12), which greatly undermines her argument and is in violation of the Local Rules. *See* LRCiv 16.1(a)(4). Parker's factual record is distinct from the evidence in *Garrison*. Here, Parker improved and stabilized with treatment from the alleged onset date of August 2011, through October 2012. After that time, she did have a recurrence of psychotic symptoms that are evident in the November 2012 and February

---

between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning."

- 7 -

2013 records (Parker switched mental health service providers and there is a record gap between these two dates, during which Parker's symptoms and treatment are unknown). Although Parker's improvement was not without set-backs, there is substantial evidence to support the ALJ's finding that she improved with treatment.

Second, the ALJ relied upon Parker's pursuit, and discontinuation, of employment training finding it was inconsistent with disabling limitations. In mid-2012, Parker expressed boredom without work and entered an employment training program, DKA. In July 2012, COPE documented that Parker was doing well at DKA. (AR 580.) In September, Parker told her case manager that she was feeling better (after suffering lithium toxicity) but did not feel well enough to work and she was not going to complete her DKA training. (AR 593.) Therefore, the ALJ's finding is supported by substantial evidence in the record. Further, at the hearing, Parker testified that her employment specialist at DKA did not think she would be able to work. (AR 33.) That testimony is inconsistent with the administrative record, which documents her discontinuation of employment services. (AR 593.) The ALJ may rely upon inconsistencies between a claimant's testimony and the record. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Third, the ALJ found that Parker's statements were not fully corroborated by objective medical evidence. Drs. Marks and Penner both concluded Parker could work despite her reported delusions and diagnosis of schizophrenia/ schizoaffective disorder. (AR 144-47, 149, 392-96.) A claimant's subjective testimony can be rejected, in part, based on a doctor's opinion. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Because the Court finds that the ALJ relied on several valid clear and convincing reasons, supported by substantial evidence, to discount Parker's credibility, the Court need not evaluate the remaining finding by the ALJ. *Id.* at 1163.

**Treating Physician's Assistant**

Parker argues the ALJ should have given weight to Ahmad Taylor, her treating physician's assistant. On February 6, 2013, PA Taylor completed a medical source statement. He found that Parker had: no limitations on remembering, understanding, and carrying out simple instructions; marked limitations in making judgments on simple decisions, interacting appropriately with public, supervisors, and co-workers, and responding to work situations; and extreme limitations on understanding, remembering and carrying out complex instructions, and making complex decisions. (AR 639-41.) PA Taylor stated that to his knowledge these limitations were present as of January 23, 2013. (AR 640.)

The ALJ gave Taylor's opinion limited weight because he is not an acceptable medical source. (AR 21.) The ALJ relied upon the fact that Taylor's assessment drew from Parker's self-reported symptoms. Also, Taylor only saw Parker once or twice before providing his opinion, and he did not address her prior improvements or GAF scores from her treatment records.

Because the opinion of a physician's assistant is not entitled to the deference given the opinion of an acceptable medical source, 20 C.F.R. §§ 404.1513(a) & (d), to discount his testimony as an "other" medical source an ALJ need provide only germane reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (contrasting the requirement that a treating physician's opinion can be rejected only with specific, legitimate reasons). In contrast to the weight given to PA Taylor, the ALJ gave significant weight to consulting examiner Dr. Glenn Marks's opinion. An ALJ is allowed to give additional weight to Dr. Marks because he was an acceptable medical source.[2] *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008).

The ALJ relied upon the fact that PA Taylor's assessment drew from Parker's self-reported symptoms. This is a germane reason to discount his opinion. *See Koepke v.*

---

[2] It is notable, however, that the ALJ's reason for discounting PA Taylor's opinion is equally applicable to Dr. Marks – no treating history and no record review.

- 9 -

*Comm'r Soc. Sec. Admin.*, 490 F. App'x 864, 866 (9th Cir. 2012). For example, PA Taylor stated that Parker has been unable to work for the past five years; however, he gave January 2013, as the effective date for the limitations he found. PA Taylor also noted that Parker reported that her impairments have impacted prior employment relationships. (AR 640.) In light of the fact that PA Taylor began to see Parker only in 2013, this information comes solely from information provided by Parker. PA Taylor referred to a psychiatric assessment (AR 639), but the administrative record does not contain such an assessment from CODAC where PA Taylor worked.

The ALJ relied upon PA Taylor's limited relationship with Parker at the time he offered his opinion. In conjunction with that finding, the ALJ noted that PA Taylor did not address any of Parker's treatment records reflecting prior improvements or GAF scores. These are specific reasons germane to this witness and supported by the record.

The ALJ did not err in giving PA Taylor's opinion limited weight. *See Fleming v. Astrue*, 303 F. App'x 546, 548-49 (9th Cir. 2008) (finding nurse practitioner's opinion was properly discounted because it relied upon self-reporting and exceeded limitations found by physicians).

**Residual Functional Capacity**

Parker argues that the ALJ's RFC failed to account for her delusions and disconnect from reality. The ALJ's RFC finding was supported by the opinion of examining psychologist Glenn Marks and the State agency consultants. Dr. Marks's opinion constitutes substantial evidence to support the ALJ's RFC finding because he conducted an independent exam of Parker. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Psychologist Eric Penner reviewed the records and offered an opinion consistent with that of Dr. Marks. (AR 147-49, 396.) Thus, there was substantial evidence in the record to support the ALJ's RFC finding.

**Step Five**

Parker argues the ALJ erred at Step Five by not including her delusions in the hypothetical to the vocational expert, and by not making a finding regarding the transferability of job skills.[3]

When an ALJ finds that a claimant has transferable job skills, she is required to make specific findings in support of that finding. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1223- 26 (9th Cir. 2009) (requiring the ALJ to comply with SSR 82-41, even if there is testimony of a vocational expert). Here, the ALJ did not make a finding that Parker had transferable job skills and, based on the vocational expert's testimony, the ALJ identified only unskilled work at Step Five. (AR 22.) As noted in SSR 82-41, even when a claimant has no transferable skills, she may be found not disabled based on an ability to perform unskilled work. Therefore, the ALJ's omission regarding Parker's transferable work skills was not error.

Next, Parker contends the ALJ failed to include all of her limitations in the hypothetical she posed to the vocational expert. An ALJ may rely on a vocational expert's testimony only if she poses a hypothetical that includes all of the claimant's limitations, which must be supported by the record. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Here, the ALJ asked the vocational expert a hypothetical based upon the RFC limitations found by the ALJ. (AR 19, 54-55.) The Court has found no error in the RFC. Therefore, the hypothetical included all of the claimant's limitations as found by the ALJ and it was not error. The ALJ was entitled to rely upon the vocational expert's testimony in making her finding at Step Five.

## CONCLUSION

The Court concludes the ALJ did not err as to any of the claims raised by Parker. Therefore, Parker is not entitled to relief and her appeal is denied.

Accordingly,

---

[3] Parker indicates these issues also implicate Step Four. (Doc. 31 at 19-20.) However, at Step Four, the ALJ found Parker could not perform her past relevant work. Parker does not challenge this finding.

1 **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court
2 shall enter judgment.
3 Dated this 27th day of May, 2015.

D. Thomas Ferraro
United States Magistrate Judge